UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| WARREN E. BELL, | ) | CASE NO. C08-0554-JCC |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| DAN J. PACHOLKE, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

INTRODUCTION AND SUMMARY CONCLUSION

Petitioner Warren Bell is a state prisoner who is currently incarcerated at the Stafford Creek Corrections Center in Aberdeen, Washington pursuant to a judgment and sentence of the Snohomish County Superior Court. He has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 seeking relief from his conviction on one count of second degree burglary. Respondents have filed an answer to the petition together with relevant portions of the state court record. The briefing is now complete and this matter is ripe for review. Following careful consideration of the record, this Court concludes that petitioner's § 2254 petition should be denied and that petitioner's petition, and this action, should be dismissed with prejudice.

FACTUAL AND PROCEDURAL HISTORY

The Washington Court of Appeals, on direct appeal of petitioner's conviction, summarized

REPORT AND RECOMMENDATION
PAGE -1

the facts of petitioner's case as follows:

> Around midnight on November 19, 2003, Snohomish County police officers Asa Bricker and Corey Cook observed Warren Bell loading a tire rim into a pickup in the parking lot of Les Schwab Tires. The pickup was parked next to a fenced tire storage area.
>
> The officers left their patrol car and walked toward Bell. Before they said anything, Bell pulled out his identification. As he handed it to Officer Bricker, Officer Cook asked Bell what he was doing. Bell said, "scrapping." Cook noticed that a gate to the fenced area was open and asked Bell if he had gone in the gate? Bell replied, "yeah, I went in there." Cook asked if he had permission "to go in there [and] get this stuff" and Bell said, "no." Cook specifically asked if Les Schwab Tires gave Bell permission, and Bell again said, "no."
>
> Officer Cook continued to converse with Bell until Officer Bricker, who had been running a warrants check, reported that Bell had outstanding arrest warrants. Officer Bricker then arrested Bell on the warrants and read him <u>Miranda</u> warnings. During subsequent questioning, Bell admitted entering the storage area by cutting a chain with a bolt cutter.
>
> The State charged Bell with second degree burglary. Following a pretrial hearing, the court ruled that Bell was not in custody during the officers' pre-arrest questioning, that his post-arrest statements were made after <u>Miranda</u> warnings, and that all of his statements were admissible. The prosecutor, "[i]n an abundance of caution," agreed not to introduce the pre-arrest statements in the State's case-in-chief, but Bell's post-arrest statements were introduced at trial.
>
> A jury convicted Bell as charged.

(Dkt. No. 13, Ex. 11 at 1-2.)

Petitioner appealed his conviction and sentence to the Washington Court of Appeals. Petitioner, through counsel, identified four issues for review on appeal: (1) the trial court's findings of fact and CrR 3.5 ruling were not supported by substantial evidence; (2) the trial court erroneously admitted petitioner's post-Miranda statements because petitioner's waiver of his *Miranda* rights was ineffective; (3) the trial court improperly considered petitioner's exercise of his right to trial when imposing sentence; and (4) the collection of a DNA sample pursuant to state

REPORT AND RECOMMENDATION
PAGE -2

statute violated the federal and state constitutions. ( *See* Dkt. No. 13, Ex. 6.) Petitioner also submitted two pro se statements of additional grounds in which he argued that the trial court erred in failing to instruct the jury on the lesser included offense of first degree trespass and that the evidence was insufficient to support petitioner's conviction for second degree burglary. (*Id*, Exs. 9 and 10.)

On October 2, 2006, the Court of Appeals issued an unpublished opinion affirming petitioner's conviction and sentence. (*Id*., Ex. 11.) Petitioner thereafter sought reconsideration of the Court of Appeals' decision. (*See id*., Exs. 12-16.) The Court of Appeals denied that motion on January 29, 2007. (*Id*., Ex. 17.)

Petitioner next filed a petition for review in the Washington Supreme Court. (*Id*., Ex. 18.) Petitioner, proceeding pro se, presented the following issues to the Supreme Court for review:

(1). Does the United States Constitution 5th and 14th amendment mean anything?

(2). Did the Court of Appeals commit an obvious error under RAP RULE 13.4(b)(3)?

(3). Did the Court of Appeals proceedings, to a right to a fair trial, under the Washington State Constitution and our United States Constitution 5th and 14th amendment commit error?

(4). Did the Court of Appeals depart from the accepted and usual course of judicial proceeding, as to call for a review by the Supreme Court under RAP RULE 13.4(b)(3)?

(5). Was the Court of Appeals ruling repugnant to the United States Constitution and the Washington State Constitution under the 14th amendment, by depriving the petitioner a right of due process under the United States 5th and 14th amendment?

(Dkt. No. 13, Ex. 18 at 2-3.)

Petitioner appeared to argue in support of these claims that he was denied a fair trial when

REPORT AND RECOMMENDATION
PAGE -3

01 the trial court denied him the opportunity to argue in closing argument that he was guilty of theft

02 or some other lesser crime than second degree burglary. (Dkt. No. 13, Ex. 18 at 3-5.)  Petitioner

03 also appeared to argue that the trial judge should have recused himself from the case because of

04 his ill health. (*Id*., Ex. 18 at 2.)  On October 31, 2007, the Supreme Court denied review without

05 comment. (*Id*., Ex. 23.)  And, on November 30, 2007, the Court of Appeals issued its mandate

06 terminating direct review. ( *Id*., Ex. 24.)  Petitioner now seeks federal habeas review of his

07 conviction.

08 GROUNDS FOR RELIEF

09       Petitioner submitted his federal habeas petition to this Court for review on April 21, 2008.

10 (*See* Dkt. No. 5.)  Petitioner identified four grounds for relief in his petition.  However, those four

11 grounds actually present only two issues for this Court's consideration.  Petitioner's first, third,

12 and fourth grounds for relief, though all presented slightly differently, rely on the same basic

13 argument; *i.e.*, that the trial court improperly denied the defense the opportunity to argue in

14 closing that petitioner was guilty of a lesser offense than second degree burglary, such as theft.

15 (*See id*. at 7, 10, and 12.)  Petitioner's second ground for relief asserts that the trial court erred

16 in admitting evidence of petitioner's post-*Miranda* statements to police in the absence of

17 substantial evidence that he knowingly and voluntarily waived his *Miranda* rights. (*See id*. at 9.)

18 DISCUSSION

19       Respondents concede that petitioner exhausted his claim that the trial court improperly

20 denied the defense the opportunity to argue that petitioner was guilty of the lesser crime of theft.

21 Respondent argues, however, that this claim is without merit.  As to petitioner's claim regarding

22 the admission of his post-*Miranda* statements to the police, respondent argues that the claim is

unexhausted because it was not fairly presented to the Washington Supreme Court.

## Exhaustion

The United States Supreme Court has made clear that state remedies must first be exhausted on all issues raised in a federal habeas corpus petition. *Rose v. Lundy*, 455 U.S. 509 (1982); 28 U.S.C. §2254(b), (c). Exhaustion must be shown either by providing the highest state court with the opportunity to rule on the merits of the claim or by showing that no state remedy remains available. *Johnson v. Zenon*, 88 F.3d 828, 829 (9th Cir. 1996)(citations omitted).

The exhaustion requirement is a matter of comity, intended to afford the state courts "the first opportunity to remedy a constitutional violation." *Sweet v. Cupp*, 640 F.2d 233, 236 (9th Cir. 1981). A federal habeas petitioner must provide the state courts with a fair opportunity to apply controlling legal principles to the facts bearing on his constitutional claim. *Picard v. Connor*, 404 U.S. 270 (1971); *Anderson v. Harless*, 459 U.S. 4 (1982). It is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state law claim was made. *Harless*, 459 U.S. at 6. The habeas petitioner must have fairly presented to the state courts the substance of his federal habeas corpus claims. *Id.*

Respondent argues that petitioner has not properly exhausted his second ground for relief because he failed to present that claim to the Washington Supreme Court on direct review. Respondent further asserts that though petitioner still has time to present his unexhausted claim to the state courts by way of a personal restraint petition, the state courts would most likely bar the claim as successive. Respondent requests that this Court deny relief on this claim on the basis of procedural bar.

Under Washington law, a personal restraint petitioner is not permitted to renew an issue

REPORT AND RECOMMENDATION
PAGE -5

01 raised and rejected on direct appeal unless the interests of justice require re-litigation of the issue.

02 *In re Lord*, 123 Wn.2d 296, 303 (1994) (citing *In re Taylor*, 105 Wn.2d 683, 688 (1986)). It

03 appears possible, even likely, that the state courts would bar any attempt by petitioner to present

04 his unexhausted claim because the Washington Court of Appeals already considered the claim on

05 direct appeal. However, in *Pirtle v. Morgan*, 313 F.3d 1160 (9th Cir. 2002), the Ninth Circuit

06 held that Washington's re-litigation rule does not serve as a bar to federal habeas review.

07       While the circumstances which resulted in the holding in *Pirtle* are perhaps distinguishable

08 from the circumstances presented here, this Court feels constrained by *Pirtle* to conclude that

09 petitioner's second ground for federal habeas relief is not procedurally barred. However, because

10 this Court concludes that petitioner's second ground for relief is without merit, the Court may

11 address that claim even absent exhaustion. *See* 28 U.S.C. § 2254(b)(2). A discussion of the

12 merits of petitioner's second ground for relief appears below.

13 Standard of Review

14       Under the Anti-Terrorism and Effective Death Penalty Act, a habeas corpus petition may

15 be granted with respect to any claim adjudicated on the merits in state court only if the state

16 court's decision was *contrary to*, or involved an *unreasonable application* of, clearly established

17 federal law, as determined by the Supreme Court, or if the decision was based on an unreasonable

18 determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d) (emphasis

19 added).

20       Under the "contrary to" clause, a federal habeas court may grant the writ only if the state

21 court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law,

22 or if the state court decides a case differently than the Supreme Court has on a set of materially

01 indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362 (2000). Under the "unreasonable

02 application" clause, a federal habeas court may grant the writ only if the state court identifies the

03 correct governing legal principle from the Supreme Court's decisions but unreasonably applies that

04 principle to the facts of the prisoner's case. *Id*. The Supreme Court has made clear that a state

05 court's decision may be overturned only if the application is "objectively unreasonable." *Lockyer*

06 *v. Andrade*, 538 U.S. 63, 69 (2003).

07 <u>Grounds One, Three and Four:  Right to Argue Defense Theory</u>

08 Petitioner asserts that the trial court violated his right to due process when it denied the

09 defense the opportunity to argue that petitioner was guilty of a lesser offense, such as theft. This

10 claim arises out of a comment made by the prosecutor during the course of petitioner's trial.

11 Specifically, the prosecutor advised the court that he would be requesting that the defense be

12 prevented from arguing that petitioner was guilty of something other than second degree burglary.

13 (Dkt. No. 13, Ex. 3 at 136.) The trial court's response to the prosecutor's comment was "I don't

14 intend to deal with it now. Deal with those matters after the testimonial phase of the trial is over."

15 (*Id*.)

16 The Due Process Clause of the Fourteenth Amendment requires that criminal prosecutions

17 "comport with prevailing notions of fundamental fairness." *California v. Trombetta*, 467 U.S.

18 479, 485 (1984). The Supreme Court has interpreted this standard of fairness "to require that

19 criminal defendants be afforded a meaningful opportunity to present a complete defense." *Id*.

20 Petitioner appears to be of the belief that the trial court, in some fashion, precluded him from

21 presenting a defense that he was guilty of a lesser offense. Petitioner is, quite simply, mistaken.

22 A review of the transcript of petitioner's trial reveals that after the initial comment made

by the prosecutor, neither the prosecutor nor petitioner's counsel ever again raised the issue of appropriate defense argument. Thus, the trial court never had occasion to rule on the issue. It is simply inaccurate to suggest that the trial court ever interfered with petitioner's ability to present the defense of his choosing.

Moreover, it is clear from the record that the defense which petitioner elected to pursue at trial was one of general denial. And, in fact, petitioner testified in accordance with that theory. Petitioner testified at trial that on the night of the burglary he was with his friend Jerry Jones in Monroe. (Dkt. No. 13, Ex. 3 at 163-64.) According to petitioner, he and Jones had driven out to Monroe that day in a truck belonging to petitioner's girlfriend. (*Id*.) As they were heading home to Seattle that evening, with Jones behind the wheel, petitioner fell asleep. (*Id*., Ex. 3 at 166-67.) According to petitioner, Jones shook him awake some time later and petitioner then realized that he was not at home in Seattle but was, instead, at the Les Schwab Tire Store in Snohomish. (*Id*., Ex. 3, 167-69.) Petitioner had stepped out of the truck to urinate when the police pulled up. (*Id*., Ex. 3 at 169-70.) By that time, according to petitioner, Jones had disappeared. Petitioner denied stealing anything from Les Schwab and he denied telling police anything to the contrary. (*Id*., Ex. 3 at 175-76.) This is the theory which petitioner's counsel argued to the jury; *i.e.*, that petitioner had not engaged in any criminal activity. (*Id*., Ex. 3 at 215-232.)

Because the defense theory was that petitioner did not engage in any criminal activity at all, the question of whether petitioner should have been allowed to present argument with respect to a lesser offense was moot. Petitioner's first, third and fourth claims are not supported by the record. Accordingly, petitioner's federal habeas petition should be denied with respect to these

REPORT AND RECOMMENDATION
PAGE -8

claims.

## Ground Two: Miranda

Petitioner asserts in his second ground for federal habeas relief that the trial court erred in admitting evidence of petitioner's post-*Miranda* statements to police in the absence of substantial evidence that he knowingly and voluntarily waived his *Miranda* rights. Though not entirely clear from the petition itself, it is petitioner's pre-arrest statements to officers at the scene of the offense which are the crux of this claim. *(See* Dkt. No. 5 at 9 and Appendix G; *see also* Dkt. No. 13, Ex. 6 at 7-17.) Petitioner is of the belief that the initial questioning by police constituted a custodial interrogation because officers had possession of his identification at that time, and that his subsequent waiver of his rights was rendered invalid by this improper prior interrogation.

The Fifth Amendment guarantees that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. This privilege applies in the context of custodial interrogations, *Miranda v. Arizona*, 384 U.S. 436, 478 (1966), and is binding on the states, *Malloy v. Hogan*, 378 U.S. 1, 6 (1964). In *Miranda*, the Supreme Court identified certain procedural safeguards which must precede an in-custody interrogation. *Id*. at 460-61. Specifically, the police must advise a person who has been taken into custody, or deprived of his freedom in any significant way, of his right to remain silent and his right to the presence of an attorney during questioning. *Id*. at 444. An individual may waive these rights if the wavier is made voluntarily, knowingly, and intelligently. *Id*.

On February 24, 2005, several months before petitioner's trial began, the court conducted a hearing pursuant to Washington Superior Court Rule CrR 3.5 to determine whether statements

01 made by petitioner to the police both before and after his arrest were admissible at trial. The only

02 evidence presented at that hearing was the testimony of the two officers involved in petitioner's

03 arrest. Petitioner, on the advice of counsel, elected not to testify at that hearing.[1]

04     After hearing the testimony of the officers, and the argument of counsel, the court recited

05 the facts, all of which were undisputed, and based upon those facts concluded that all of

06 petitioner's statements to police, those made before he received his *Miranda* warnings and those

07 made after, were admissible. On appeal, petitioner challenged the trial court's findings and

08 conclusions, arguing that the court had recounted the events in the incorrect order leading it to

09 erroneously conclude that petitioner's pre-arrest questioning was investigatory rather than

10 custodial. (*See* Dkt. No. 13, Ex. 6 at 7-17.) Specifically at issue was the fact of petitioner

11 providing his identification to officers. (*Id.*) This fact was set forth at number six in the court's

12 written findings and conclusions which, according to petitioner, suggested that this event had

13 occurred later in petitioner's interaction with police rather than at the very beginning. (*Id.*)

14 Petitioner argued that the fact that officers had his identification before they began to ask him

15 questions rendered the officers' initial interrogation custodial and therefore improper because it

16 was not preceded by *Miranda* warnings. (*Id.*) Petitioner went on to argue that because his initial

17 interrogation was improper, his subsequent waiver of his *Miranda* rights was invalid. (*Id.*)

18     The Washington Court of Appeals, on direct review, rejected petitioner's *Miranda* claims.

19 The Court of Appeals concluded that petitioner was subjected to an investigatory detention when

20

21     [1] Petitioner's counsel explained to the court that she had advised her client not to testify at the 3.5 hearing because "I think that his issues with this case do not surround the reading of
22 *Miranda* rights." (Dkt. No. 13, Ex. 1 at 24.)

REPORT AND RECOMMENDATION
PAGE -10

he was first confronted by officers which did not "ripen into" a custodial interrogation until petitioner was formally arrested. (*Id*., Ex. 11 at 4.) The Court of Appeals explained as follows:

> The questioning and detention were brief and the atmosphere was not coercive. Bell voluntarily conversed with the officers and, with no prompting, offered them his identification. He may well have felt he was not free to leave, particularly while the police had his identification. But the police never requested his identification; he volunteered it. Moreover, as noted above, the fact that a person does not feel free to leave is insufficient, by itself, to demonstrate the degree of restraint associated with a custodial interrogation. We conclude that a reasonable person in Bell's circumstances would not have felt that his or her freedom was curtailed to a degree associated with formal arrest. Therefore, the pre-arrest detention and questioning did not rise to the level of a custodial interrogation, and the trial court did not err in admitting Bell's pre- and post-arrest statements to police.

(*Id*., Ex. 11 at 4-5.)

Petitioner makes no showing that this decision of the Washington Court of Appeals is contrary to, or constitutes and unreasonable application of, federal law as determined by the United States Supreme Court. Accordingly, this petitioner's federal habeas petition should be denied with respect to this claim.

## CONCLUSION

For the reasons set forth above, this Court recommends that petitioner's federal habeas petition be denied and that the petition and this action be dismissed with prejudice. A proposed order accompanies this Report and Recommendation

DATED this 16th day of July, 2008.

Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE -11